UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PENDLETON DIVISION

JAMES ARTHUR ROSS,

    Plaintiff,

  v.

BRIGETTE AMSBERRY, Supt. of TRCI;
KELLY A RATHS; KELLY L. ARRINGTON;
C. MCMILLEN; S. DEACON; DAVID J.
PEDRO; and SHERRY L. ILES,

    Defendants.

Case No. 2:17-cv-1960-YY

OPINION AND ORDER

YOU, Magistrate Judge:

## INTRODUCTION

Plaintiff, James Ross ("Ross"), an inmate at Two Rivers Correctional Institution ("TRCI") in Umatilla, Oregon, filed this action on December 8, 2017. Ross alleges that various employees of the Oregon Department of Corrections ("ODOC") violated his rights to free speech, due process, and equal protection by denying him access to a magazine he ordered in November 2016. He seeks a declaration that ODOC's mail policies are unconstitutional, access

to the publication he ordered, a full and fair hearing, a reprimand of those persons who violated his constitutional rights, and damages of $54,329.36. Compl. 6, ECF #2.

This court has jurisdiction over Ross's claims under 28 USC § 1331 and 42 USC § 1983. All parties have consented to allow a Magistrate Judge to enter final orders and judgment in this case in accordance with FRCP 73 and 28 USC § 636(c). Now before the court is defendants' Motion for Summary Judgment (ECF #24). For the reasons that follow, Ross has failed to establish any violation of his constitutional rights. Accordingly, the motion is granted and judgment will be entered in favor of defendants.

## STANDARDS

A party is entitled to summary judgment if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FRCP 56(a). The moving party has the burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in the non-movant's favor. *Newmaker v. City of Fortuna*, 842 F.3d 1108, 1111 (9th Cir. 2016), *cert. denied*, 137 S. Ct. 2217 (2017). Although "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment," the "mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 255 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation and quotation marks omitted).

## DISCUSSION

**I. Undisputed Material Facts**

ODOC administrative rules require the confiscation or return to the sender of mail containing sexually explicit materials, including those containing:

> (i) Portrayal of actual or simulated sexual acts or behaviors between human beings including, but not limited to, intercourse, sodomy, fellatio, cunnilingus, or masturbation.
> (ii) Portrayal of actual or simulated penetration of the vagina or anus, or contact between the mouth and the breast, genitals, or anus.
> (iii) Portrayal of actual or simulated stimulation of the breast, genitals, or anus.

OAR 291-131-0035(1)(a)(C)(i)-(iii).

On November 15, 2016, Christy McMillen ("McMillen"), an Office Specialist at TRCI, reviewed the November 1993 issue of *Gallery* ("the magazine"), which had been mailed to Ross at TRCI. McMillen Decl. ¶ 4, ECF #25. McMillan then issued a "Publication Violation Notice" ("Notice") to Ross, advising him that pages 121-22 contained sexually explicit material "representative of materials throughout the entire publication," in violation of the standards of OAR 291-131-0035(1)(a)(C)(i)-(iii). *Id*., Ex. 1. The Notice also advised Ross that he could obtain independent administrative review of the rejection of the written or pictorial content of the correspondence by writing to the Functional Unit Manager within 30 days. *Id*.

Ross sought review and, on November 30, 2016, was permitted to review the rejected mail as part of an administrative review.[1] *Id*., Ex. 3. Sirena Deacon ("Deacon"), an "Office

---

[1] Defendants submitted for *in camera* review the cover and two pages (including page 121 and one other unnumbered page) of the magazine. ECF #42 (filed under seal). Ross objected to the inclusion of the unnumbered page, which depicts a "'Best Seller' List" advertising for sale well over a dozen devices apparently intended to enhance sexual pleasure along with illustrations of women stimulating their breasts and masturbating, as Ross claims he never saw that page. ECF #42, at 3; Ross Aff. 1-2, ECF #34. It is unclear whether McMillen relied on that particular

Specialist 2" employed by ODOC, then affirmed the mail violation regarding "*Gallery* 1993." *Id*. The affirming order cited only the standard set forth in OAR 291-131-0035(1)(a)(C)(i), regarding portrayal of "actual or simulated sexual acts or behaviors between human beings including, but not limited to, intercourse, sodomy, fellatio, cunnilingus, or masturbation." *Id*. Ross then filed this action just over a year later.

## II.     First Amendment

In Claim I, Ross argues that the confiscation of the magazine impinged his rights under the First Amendment. A prisoner retains "those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). Accordingly, "[w]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987).

This court rejects Claim I to the degree it seeks to challenge OAR 291-131-0035(1)(a)(C) as unconstitutional on its face. *Bahrampour v. Lampert*, 356 F.3d 969, 972 (9th Cir. 2004). Ross argues that the ODOC mail rule at issue in this case is not reasonably related to legitimate penological objectives and, in particular, takes issue with the opinion of Dr. Neil M. Malamuth regarding the effect of sexually explicit materials on prison inmates, which informed the decision in *Bahrampour*. Ross then proffers his own "expert" opinion regarding the effects of sexually explicit materials inside prison walls, explaining that "anything can be bartered in prison" and recounting how the evolution of ODOC rules regarding the receipt and storage of mail largely stopped the bartering of clippings. Pl.'s Resp. 2-4, ECF #34. Whatever Ross's personal

---

unnumbered page in issuing the Notice. However, the failure to allow Ross to review that page is harmless because the material on page 121, which Ross did review and was specifically relied on by McMillen in issuing the Notice, was a sufficient basis for rejecting the publication under OAR 291-131-0035(1)(a)(C)(i).

experience on this subject during the term of his incarceration, *Bahrampour* is binding on this court and precludes any argument that OAR 291-131-0035(1)(a)(C) is invalid as unsupported by a rational relationship to legitimate penological objectives. *See Perez v. Peters*, 2015 WL 3439846, at *2 (D. Or. May 27, 2015) ("The Ninth Circuit has already considered and rejected the argument that [OAR 291-131-0035(1)] is facially unconstitutional.").

Ross also contends that the magazine does not fit within the intended scope of the rule, the purpose of which he asserts was to prevent possession of only certain categories of depictions. He contrasts the article in the magazine he ordered with "XXX pornography with pages and pages of hardcore sexual scenes or bondage or s&m or rape portrayals or child pornography." Pl.'s Resp. 6, ECF #34. He describes the magazine article cited as the basis for the violation (page 121) as "an informative if not educational explanation of how to satisfactorily satisfy your woman," that he wishes to "enjoy in the privacy of [his] own cell," and characterizes defendants' confiscation of the magazine based on the "connect-the-dot picture" that accompanied the article as an exaggerated response to legitimate governmental interests. *Id*. at 6-7, 14, 16. Finally, Ross asserts that the ODOC mail rules, under which "anything of erotic, pornographic or just outright opposite gender (female) is literally being wiped out," have resulted in male inmates "getting sex changes and boob jobs" in response to this "outright attack on [inmates'] sexuality." *Id*. at 5-6, 14-15.

The difficulty for Ross is that defendants have crafted a straightforward, objective rule governing inmate mail, and it is clear from this court's independent review of the materials submitted *in camera* that the image accompanying the article falls squarely within the scope of what that rule prohibits. *See* OAR 291-131-0035(1)(a)(C)(i); ECF #42, Ex. 2 (*in camera*) p. 3. As in *Bahrampour*, it is "undisputed that two levels of prison officials found the materials

violated the regulations." 356 F.3d at 974. This court discerns no basis in the record of this case for any different conclusion regarding Ross's claim under the First Amendment than in *Bahrampour*. Accordingly, defendants are entitled to summary judgment against Ross's claims to the extent they are premised on the First Amendment.

## III. Fourteenth Amendment

Ross asserts a violation of his procedural due process and equal protection rights under the Fourteenth Amendment to the United States Constitution.[2] However, nothing Ross has submitted explains how his rights under the Equal Protection Clause were violated.[3] Thus, this court considers only the due process allegations of Claim II.

---

[2] The pleadings also assert that defendants' actions violated Ross's rights to due process and equal protection under the Oregon Constitution. Compl. 4, ECF #2. However, neither the pleadings nor the briefs further mention the "due process" or "equal protection" provisions of the state constitution. To the degree Ross alleges a violation of Article I, section 10 of the Oregon Constitution, his claim fails. *See Smith v. Dep't of Corr.*, 219 Or. App. 192, 196-97 (2008) (upholding validity of inmate mail rules against constitutional challenge under Article I, section 10 of the Oregon Constitution and the Due Process Clause of the federal constitution; rejecting argument that due process requires predisposition notice and review of a prison official's decision to confiscate, censor, or reject inmate mail). Nor does Article I, section 20 of the Oregon Constitution appear to have any application in this context. *See State v. Savastano*, 354 Or. 64, 73-91 (2013) (discussing in detail the origin and interpretation of Article I, section 20 and noting parallels drawn between that clause and the Equal Protection Clause of the Fourteenth Amendment) (*en banc*).

[3] Ross does not claim that his mail was confiscated because of his membership in a protected class, leaving the possibility that he contends he is in a "class of one" and was intentionally treated differently than similarly situated individuals without any rational basis for the difference in treatment. *See Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). However, nothing in the record reveals any allegation that a similarly-situated individual received differential treatment. Instead, Claim II alleges only that Deacon was not sufficiently independent, resulting in a due process violation. *See* Complaint 4-5, ECF #2. Absent any evidence that Ross was treated differently than similarly situated individuals without a rational basis, the equal protection portion of Claim II fails.

Prisoners have a liberty interest in uncensored communication that "attaches not only to communications by letter, but also to a prisoner's receipt of subscription publications." *Krug v. Lutz*, 329 F.3d 692, 697 (9th Cir. 2003) (citations omitted). This entitled Ross to the "minimal procedural safeguards" of notice that his mail was being withheld and a "two-level review" of the decision to censor his mail, meaning that the decision to withhold the correspondence from Ross had to be "'referred to a prison official other than the person who originally disapproved the correspondence.'" *Id*. (quoting *Procunier v. Martinez*, 416 U.S. 396, 418-19 (1974)).

Ross does not dispute that he received notice of the withholding of his mail. Instead, he asserts that his due process rights were violated because the administrative review he received was insufficient. In support of this argument, Ross contends that Deacon "stated herself that if it was up to her she would allow the publication and that she personally believed that people needed to be more 'adult' about these matters." Pl.'s Resp. 8, ECF #34. In essence, Ross contends that the review by Deacon was not adequately independent because she felt constrained by more senior prison officials in Salem who had already determined that the rule was to be strictly enforced and that the contents of the magazine fell within the scope of the rule.

The due process protection afforded by the Fourteenth Amendment requires only "some evidence" to support a decision by prison officials that results in the loss of a liberty interest. *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 455 (1985). The "some evidence" standard "does not require examination of the entire record, independent assessment of the credibility of witnesses, or the weighing of evidence." *Id*. As discussed above, the magazine contains a depiction clearly prohibited by OAR 291-131-0035(1)(a)(C)(i). Ross was afforded notice and administrative review by two ODOC officials, and in light of the fact that "some evidence" supports those officials' decisions, this court need not and does not delve into

speculation about why Deacon upheld the publication violation notice. Accordingly, defendants are entitled to summary judgment against Ross's claims to the extent they are premised on the due process guarantees of the Fourteenth Amendment.[4]

**ORDER**

For the reasons stated above, defendants' Motion for Summary Judgment (ECF #24) is GRANTED and judgment will be entered in favor of defendants.

DATED July 17, 2018.

/s/ Youlee Yim You
Youlee Yim You
United States Magistrate Judge

---

[4] Defendants also assert that they are entitled to qualified immunity against Ross's claims. Because this court concludes that no constitutional violation took place, it need not further address the issue of qualified immunity. *Saucier v. Katz*, 533 U.S. 194, 201 (2001) (identifying threshold issue of whether "the facts alleged show the officer's conduct violated a constitutional right" and noting that "[i]f no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity").